**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DEBBY D.,[1]

             **Plaintiff,**                    **Case No. 2:24-cv-7776**
                                                    **Magistrate Judge Cheryl L. Pollak**

    v.

FRANK BISIGNANO,
**Commissioner of Social Security,**

             **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Debby D. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the Commissioner of Social Security, is substituted as Defendant in his official capacity.

## I.    PROCEDURAL HISTORY

On December 21, 2020, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she had been disabled since an alleged onset date of October 1, 2020. R. 123–24, 144–45, 255–63. Plaintiff's applications were denied initially and upon reconsideration. R. 151–60, 164–70. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 172–73. ALJ Dina Loewy held a telephonic hearing due to the COVID-19 pandemic on June 23, 2022, at which Plaintiff, who was represented by Wanke Hampton,[3] testified, as did an impartial vocational expert. R. 76–106.

In a decision dated February 7, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 1, 2020, the alleged onset date, through the date of that decision. R. 51–70. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 26, 2023. R. 27–33. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 15, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[4] On April 20, 2026, the case was reassigned to the undersigned. ECF No. 22. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

---

[3] The ALJ describes this person as a non-attorney representative, R. 51, but the hearing transcripts identifies this person as an attorney, R. 76.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

3

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

5

omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g., Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

B.    **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§

404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 54 years old on her alleged disability onset date. R. 107, 115, 125, 135. The claimant meets the insured status requirements of the Social Security Act through June 30, 2023. R. 54. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between October 1, 2020, her alleged onset date, and the date of the decision. R. 54.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar spine degenerative disc disease; fibromyalgia; hearing loss; and obesity. *Id*. The ALJ also found that the following medically determinable impairments[5] were not severe: hammertoe;

---

[5] The ALJ referred to Plaintiff's medically determinable physical impairments as "medically determinable mental impairments[.]" R. 56. While apparently a typographical error, the ALJ's choice of words is  confusing.

equinus deformity; hallux limitus; GERD; fatty liver; high cholesterol; hypertension; peripheral neuropathy; sciatica; anxiety; depression; panic disorders; and posttraumatic stress disorder ("PTSD"). R. 54–59.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 59–61.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various exertional and non-exertional limitations. R. 61–69. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as an accounting clerk and administrative clerk as generally performed and as actually performed. R. 68–69.

In the alternative, the ALJ went on to find that, even if Plaintiff was further limited and had the RFC to perform sedentary work subject to various exertional and non-exertional limitations, she was "able to perform her past relevant work as an Accounting Clerk as generally performed, and as actually performed at one of her jobs at Kelly Services. She can perform her past relevant work as an Administrative Clerk as actually performed." R. 69–70.[6] The ALJ

---

[6] The ALJ specifically found, in the alternative, this more limited RFC determination:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally perform lifting and/or carrying 10 pounds, frequently less than 10 pounds. She can perform standing and/or walking with normal breaks for a total for both of 2 hours in an 8-hour workday and sitting with normal breaks for 6 hours in an 8-hour workday. She can occasionally perform climbing of ramps or stairs, and never climbing ladders ropes or scaffolds. The claimant can occasionally stoop, kneel, and crouch, and never crawl. She can tolerate moderate level noise and can perform frequent handling and fingering. The claimant must avoid all exposure to unprotected heights. She is limited to work that, after standing or walking for 30 minutes, allows her sit for 3 minutes while on task, before resuming standing or walking. She is limited to work that, after sitting for 30 minutes, allows her to stand or walk for 3 minutes while on task, before resuming sitting. She is limited to work allowing her

8

therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 1, 2020, her alleged onset date, through the date of the decision. R. 70.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief*, ECF No. 14 ("*Pl. Br.*"); *Plaintiff's Reply Brief*, ECF No. 21 ("*Pl. Reply*"). The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 20 ("*D. Br.*").

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On January 5, 2022, Plaintiff's primary care physician, Sohee Bidol-Lee, M.D., completed a four-page, check-the-box, and fill-in-the-blank form entitled, "PHYSICAL Medical Source Treatment Questionnaire." R. 585–88 ("January 2022 opinion").[7] Dr. Bidol-Lee began treating Plaintiff in December 2015. R. 585. She diagnosed Plaintiff with fibromyalgia and peripheral neuropathy[8] and found Plaintiff's prognosis was fair. *Id*. When asked to identify the clinical findings, laboratory, and test results that support Plaintiff's impairments, Dr. Bidol-Lee responded: "Sometimes debilitating back pain[;] neuropathic pain in hands & feet[;] she follows

---

to elevate her legs on a 6"-12" stepstool under her desk while seated and remining on task[.]

R. 69 (providing further at footnote 3 that "[t]he vocational expert further testified that the past relevant work could still be performed even if the claimant were further limited to never kneeling or crouching (Hearing Testimony)"); *see also* R. 70 (addressing Plaintiff's ability to perform her past relevant work).

[7] Dr. Bidol-Lee issued other opinions that are not the basis of a challenge and, therefore, not a subject of this Court's opinion.

[8] Dr. Bidol-Lee offered a third diagnosis, but it is illegible. R. 585.

[up] regularly with a pain management specialist[.]" *Id.* Dr. Bidol-Lee described Plaintiff's pain as "[d]aily hand pain with [illegible] whole body pain from fibromyalgia[;] paresthesia & pain in her hands & feet." *Id.* Dr. Bidol-Lee identified "[s]welling in feet[;] cannot sit or stand for prolonged periods b/c of pain." *Id.* This physician described Plaintiff's treatment as "follows up regularly with pain management[;] has done physical therapy in the past." *Id.*

Dr. Bidol-Lee affirmed that Plaintiff's impairments have lasted or could be expected to last at least twelve months. *Id.* She denied that Plaintiff was a malingerer and affirmed that Plaintiff's impairments (physical impairments plus any emotional impairments) are reasonably consistent with the symptoms and functional limitations described in the evaluation. R. 585–86. Dr. Bidol-Lee affirmed that Plaintiff's emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, specifically identifying depression. *Id.*

According to Dr. Bidol-Lee, Plaintiff's experience of pain or other symptoms were severe enough to constantly interfere with attention and concentration needed to perform even simple work tasks during a typical workday. R. 586. She further opined that Plaintiff was incapable of even "low stress" jobs. *Id.*

Dr. Bidol-Lee opined that Plaintiff could walk one city block without rest; could sit for 10 minutes at a time; and could stand for 10 minutes at a time. *Id.* She also opined that Plaintiff could sit and stand/walk for less than 2 hours total in an eight-hour workday (with normal breaks). *Id.* Dr. Bidol-Lee denied that Plaintiff needed periods of walking around during an eight-hour day, but found that Plaintiff needed a job that permitted shifting positions at will from sitting, standing, or walking. R. 586–87. Dr. Bidol-Lee opined that Plaintiff "constantly" needed to take 10–15 unscheduled breaks. R. 587. She also opined that Plaintiff needed to elevate her legs at chest level 75% of the time during an eight-hour workday. *Id.* Dr. Bidol-Lee affirmed that

10

Plaintiff must use a cane or other assistive device while occasionally standing/walking. *Id*.

According to Dr. Bidol-Lee, Plaintiff could occasionally lift and carry less than 10 pounds in a competitive work environment, but never lift and carry 10 pounds or more. *Id*. She opined that Plaintiff could occasionally look down (sustained flexion of the neck); turn head right or left; look up; and hold head in a static position. *Id*. Dr. Bidol-Lee also opined that Plaintiff could occasionally twist; could rarely stoop/bend; but could never crouch/squat or climb ladders. R. 588. She further found that Plaintiff was significantly limited with reaching, handling, and fingering: Plaintiff could use bilateral fingers, hands, and arms 50% of the time during an eight-hour workday to perform fine manipulations; grasp, turn, and twist objects; and reach (including overhead). *Id*.

Dr. Bidol-Lee affirmed that Plaintiff's impairments were likely to produce "good days" or "bad days" and opined that Plaintiff, on average, was likely to be absent from school or work more than three times a month as a result of her impairments or treatment. *Id*. When asked what the earliest date that the description of the symptoms and limitations in the questionnaire apply, Dr. Bidol-Lee responded: "Prior to my knowing her, [illegible] 2012[.]" *Id*.

## V.    DISCUSSION

Plaintiff argues, among other things, that the ALJ erred in failing to properly evaluate Dr. Bidol-Lee's January 2022 opinion in accordance with the applicable regulations, 20 C.F.R. §§ 404.1520c, 416.920c. *Pl. Br.*, pp. 19–25; *Pl. Reply*, pp. 3–5. For the reasons that follow, the Court agrees that the ALJ's deficient analysis of this opinion warrants remand.

The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that

11

supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[9] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

---

[9] As previously noted, Plaintiff's claims were filed on December 21, 2020.

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his or her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other

13

factors."). Finally, "a judge need not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the judge "weave[s] supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

At step four of the sequential evaluation process in the present case, the ALJ found that Plaintiff had the RFC to perform light work subject to certain additional exertional and non-exertional limitations as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally perform lifting and/or carrying 20 pounds and frequently 10 pounds. She can perform standing and/or walking with normal breaks for a total for both of 6 hours in an 8-hour workday and sitting with normal breaks for 6 hours in an 8-hour workday. She can occasionally perform climbing of ramps or stairs, and never climbing ladders ropes or scaffolds. The claimant can occasionally stoop, kneel, and crouch, and never crawl. She can tolerate moderate level noise and can perform frequent handling and fingering.

R. 61.[10] In making this finding, the ALJ considered, *inter alia*, Dr. Bidol-Lee's January 2022 opinion "not persuasive[,]" reasoning as follows:

> In January 2022, treating primary care physician Sohee Bidol-Lee, MD opined that the claimant could sit for a total of less than 2 hours, and stand/walk for a total of less than 2 hours in an 8-hour workday. She needed a job allowing her to alternate sitting, standing, and/or walking positions at will, and she constantly needed to take 10-15-minute unscheduled breaks during the 8-hour workday. She needed to elevate her legs above heart-level with prolonged sitting, for 75% of the workday. She could occasionally lift less than 10 pounds, and occasionally look down (sustained flexion of the neck), turn head right or left, look up, and hold her head in static position. She could occasionally twist, rarely stoop/bend, and never climb ladders or crouch/squat. The claimant could use her bilateral hands for gross and fine manipulations, and her bilateral arms for reaching, including overhead, for 50% of an 8-horu [sic] workday. In addition, the claimant's pain or other symptoms were constantly severe enough to interfere with the attention and concentration

---

[10] As noted *supra* n. 6, the ALJ issued an alternative more limited RFC finding. R. 69.

14

needed to perform even simple tasks. She was incapable of even "low stress" jobs, and her impairments or treatment would likely cause her to be absent from work more than 3 times per month (Exhibit B-13F).

R. 65. The ALJ found this opinion was "not persuasive" because "clinical findings in evidence do not support the assessed limitations regarding the claimant's capacity." *Id*. The ALJ also explained that "Dr. Bidol-Lee's own treating notes are not consistent with these assessed limitations. Further, while this opinion considers the claimant's subjective complaints, it does not adequately consider her self-reported retained physical capacity for such tasks as activities of daily living despite her severe medical impairments." *Id*.

In challenging the ALJ's consideration in this regard, Plaintiff contends that the ALJ fails to explain why she found Dr. Bidol-Lee's opinion unsupported and inconsistent. *Pl. Br.*, pp. 19–25; *Pl. Reply*, pp. 3–5. As to supportability, Plaintiff complains that the ALJ simply stated in conclusory fashion that the "clinical findings . . . do not support the assessed limitations" without any discussion as to what those clinical findings were. *Pl. Br.*, p. 22; *Pl. Reply*, p. 3. Plaintiff argues that this conclusory statement does not satisfy the ALJ's obligation under the applicable regulations. *Pl. Br.*, pp. 22–23; *Pl. Reply*, p. 3.

Plaintiff also contends that the ALJ's consideration of the consistency factor was similarly deficient because the ALJ did not identify any specific treating notes and did not articulate why such evidence was inconsistent. *Pl. Br.*, pp. 23–24 (arguing further that record evidence is, in fact, consistent with Dr. Bidol-Lee's January 2022 opinion) (citations omitted); *Pl. Reply*, p. 3. Plaintiff therefore takes the position that the ALJ's failure to explain her consideration of the supportability and consistency of this opinion precludes judicial review and requires remand of the action. *Pl. Br.*, pp. 24–25; *Pl. Reply*, pp. 4–5.

15

This Court agrees that the lack of clarity in the ALJ's reasoning requires remand. As Plaintiff points out, the ALJ generally refers to "clinical findings" upon which she relies to discount Dr. Bidol-Lee's January 2022 opinion. R. 65.[11] The ALJ provides no citation to the record to support this conclusion. *Id*. Nor does she explain what these "clinical findings" were and how they undermined Dr. Bidol-Lee's January 2022 opinion. *Id*. While it is true that the ALJ need not use "particular language or adhere to a particular format" when considering opinion evidence, the ALJ must still provide a "discussion of the evidence" and an "explanation of reasoning" "sufficient to enable meaningful judicial review." *Diaz*, 577 F.3d at 504 (internal quotation marks and citations omitted); *see also Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

In the instant case, the ALJ recited findings from other medical sources but provided no explanation as to how or even if she found these other instances of medical evidence to be in conflict with Dr. Bidol-Lee's findings, nor did she resolve any such conflicts that she may have found in the evidence.  For example, she noted that a consultative examination conducted by

---

[11]  If the ALJ intended to rely on "clinical findings" made by someone other than Dr. Bidol-Lee, the ALJ erred in referring to the supportability of Dr. Bidol-Lee's January 2022 opinion, when the ALJ was actually attacking the "consistency" of that opinion. R. 65 (stating that "clinical findings in evidence do not support the assessed limitations"); *see also* 20 C.F.R. §§ 404.1520c(c)(1), (2), 416.920c(c)(1), (2); *Pipkin v. Kijakazi*, No. CV 22-2-E, 2023 WL 411291, at *1 (W.D. Pa. Jan. 25, 2023) ("'[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.'") (quoting *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021)). Since the ALJ failed to identify which clinical findings she was relying on, the possible mistaken word choice contributes to the confusion and ambiguity in the ALJ's reasoning when discounting this opinion.

16

Alexander Hoffman, M.D., in May 2021 revealed, *inter alia*, that Plaintiff could get onto the examining table "without difficulty[,]" get up from the supine position, and put weight on one leg at a time. R. 63. The ALJ noted that Dr. Hoffman further found that Plaintiff did not have any apparent joint swelling or major restrictions of motion and that Plaintiff was able to ambulate without the use of an assistive device. *Id*.  The ALJ does not indicate what impact, if any, these findings had on her conclusion.

The ALJ also noted the July 2021 examination by treating rheumatologist, Shemett Griffiths, M.D., regarding Plaintiff's fibromyalgia, in which it was reported that Plaintiff had full range of motion of the bilateral hands and wrists, elbows, shoulders, and knees  as well as 5/5 strength in all upper and lower extremities with no Heberden's or Bouchard's nodes, no greater trochanteric bursitis, and no paraspinal tenderness, and negative straight leg raise testing was negative. R. 64. Again, the ALJ failed to comment on what conclusions she drew from these results as compared to the findings of Dr. Bidol-Lee.

In addition, the ALJ discussed the April 2022 examination by Plaintiff's pain management provider, Johnathan Simhaee, M.D., in which it was reported that Plaintiff's gait was normal and that she had 5/5 strength throughout bilateral lower extremities and sensation was intact. R. 64, 66. The ALJ further discussed that Plaintiff's pain management providers noted that since March 2020, Plaintiff had a normal gait and did not mention Plaintiff ambulating with an assistive device. R. 66.

The ALJ also noted a July 2021 examination by Dr. Griffiths, in which it was reported that Plaintiff had limited hip flexion at 45 degrees due to hamstring pain, as well as bilateral ankle tenderness, lumbar spine tenderness, and right greater than left sacroiliac joint tenderness. R. 64. Plaintiff could make a full fist but had decreased hand grip. *Id*. The ALJ also considered

17

that Dr. Simhaee found in April 2022 that Plaintiff had spasm and tenderness over the lumbar paravertebral musculature bilaterally and that she had pain with flexion and extension of the lumbar spine, and positive slump and straight leg raise testing bilaterally. R. 64. The ALJ noted that this provider also found that there was a positive facet loading bilaterally, positive Faber's test, and positive gaenslen maneuver along with tenderness to palpation over the bilateral sacroiliac joints. *Id.* The ALJ specifically noted that Dr. Simhaee prescribed, *inter alia*, a back brace. *Id.* The ALJ did not describe the significance of these findings, nor did she explain whether she found them supportive or consistent with the findings of Dr Bidol-Lee.[12]

In this case, while the ALJ discussed years of medical and other record evidence, the Court cannot determine whether the ALJ found some or all of the "clinical findings" in this recitation as undermining Dr. Bidol-Lee's January 2022 opinion, without forcing the Court to engage in the work of the ALJ. R. 62–68; *see also Messina v. Comm'r of Soc. Sec.*, 844 F. App'x 586, 589–90 (3d Cir. 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations.") (citations omitted); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon

---

[12]As noted above, the ALJ appeared to confuse consistency and supportability, erroneously referring to the supportability of Dr. Bidol-Lee's January 2022 opinion when apparently attacking the consistency of that opinion with clinical findings in the record. *See Pipkin*, 2023 WL 411291, at *1.

Similarly, the ALJ mistakenly referred to the consistency of that opinion instead of supportability when she found that Dr. Bidol-Lee's "own treating notes are not consistent with these assessed limitations." R. 65. In the next paragraph, the ALJ highlighted that Dr. Bidol-Lee's treating notes reflected, *inter alia*, generally normal findings from January 2020 to November 2021. R. 65 (citations omitted).

18

situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

In short, the ALJ's failure to identify "clinical findings" upon which she relied and failure to otherwise explain how such findings were inconsistent with Dr. Bidol-Lee's January 2022 opinion precludes meaningful judicial review based on the present record.[13] R. 63–66; *see also Brownsberger v. Kijakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *7 (M.D. Pa. Jan. 18, 2022) (remanding where, among other things, the "ALJ d[id] not provide any citations to specific evidence on the record to explain his reasoning. . . .").

The ALJ's error in relying on unidentified objective "clinical findings" with no explanation is particularly problematic given that the ALJ found Plaintiff's fibromyalgia was a severe impairment. R. 54 (finding fibromyalgia a severe impairment), 64 (stating that "[i]n terms of fibromyalgia," the ALJ noted that Dr. Griffiths found, *inter alia*, some limitations in ranges of motion as well as tenderness, "[*h*]*owever*, [Dr. Griffiths further found that] she [Plaintiff] also had full range of motion of bilateral hands and wrists, elbows, shoulders, and knees[,]" no paraspinal tenderness, and "had 5/5 strength in all upper and lower extremities") (emphasis added); *cf. Henderson v. Astrue*, 887 F. Supp. 2d 617, 636 (W.D. Pa. 2012) ("[I]t is error for an ALJ to rely on the lack of objective evidence to reject a treating physician's opinion in a

---

[13] This is true even if, assuming—without definitively deciding—for present purposes only, that the ALJ properly considered the supportability of Dr. Bidol-Lee's January 2022 opinion. *See Handel C. v. Dudek*, No. 2:23-CV-1211, 2025 WL 1024334, at *9–10 (D.N.J. Apr. 7, 2025) (remanding where the ALJ explained why a physician's own treating notes did not support his opinion, but the ALJ did not explain—and the Court could not determine—how the record was inconsistent with the opinion); *cf. Minarsky v. Kijakazi*, 747 F. Supp. 3d 801, 814–17 (M.D. Pa. 2024) (finding that the ALJ properly considered the consistency of a medical opinion but concluding that failing to analyze its supportability was harmful error).

disability case involving a diagnosis of fibromyalgia due to the nature of the disease."). The Court simply cannot follow the ALJ's reasoning without engaging in conjecture and improperly infringing on the province of the ALJ and re-weighing the evidence. *See Messina*, 844 F. App'x at 589–90; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

Similarly, the ALJ's reliance on unidentified "activities of daily living" when discounting Dr. Bidol-Lee's January 2022 opinion is also defective. R. 65. The ALJ noted: "Further, while this opinion [Dr. Bidol-Lee's January 2022 opinion] considers the claimant's subjective complaints, it does not adequately consider her self-reported retained *physical capacity* for tasks such as activities of daily living despite her severe medical impairments." *Id*. (emphasis added); *see also Pl. Br.*, p. 24 (complaining that the ALJ's conclusory statement about unspecified activities does not satisfy the ALJ's obligation under the applicable regulation).

Here, it is unclear from the ALJ's discussion how Plaintiff's daily activities are inconsistent with Dr. Bidol-Lee's opined limitations. Indeed, the ALJ does not identify which self-reported daily activities purportedly undermine the physical limitations in the doctor's opinion. R. 65. On two of the three occasions that the ALJ discusses specific daily activities, the ALJ expressly considers only Plaintiff's "mental capacity"—not physical capacity—to perform these activities. R. 57 (noting twice at step three of the sequential evaluation that Plaintiff "reported the retained mental capacity to bathe, dress, and groom herself, prepare meals for herself and her uncle with whom she lived, read, listen to music, drive, and travel independently via public transportation"). During the third and final time that the ALJ identifies and discusses Plaintiff's daily activities at step four when recounting Plaintiff's hearing testimony, it is not immediately apparent from the ALJ's recitation how such activities undermine Dr. Bidol-Lee's opined physical limitations. R. 62 (noting that Plaintiff testified that, "outside of caring for her

20

uncle, her daily activities include going to a lot of doctor and physical therapy appointments, resting, and going for walks. She does laundry and grocery shopping as well. She stated that she can walk as far as 2-3 blocks without stopping").[14]  By not explaining which activities that she finds inconsistent with Dr. Bidol-Lee's January 2022 opinion, the ALJ fails to build a "logical bridge" between the evidence and her decision to discount that provider's opinion. *See Bienkowski v. Bisignano*, No. 4:24-CV-1714, 2025 WL 1668328, at *7 (M.D. Pa. June 12, 2025) ("[A]s part of the ALJ's duty of articulation, the ALJ must establish a logical bridge between the evidence and the ALJ's legal conclusions and factual findings."); *Glenda M. v. Comm'r Soc. Sec.*, Civ. No. 22-03137, 2023 WL 6387515, at *6 (D.N.J. Sep. 29, 2023) ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [his] conclusions.") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

Moreover, the Court is unable to conclude that the ALJ's error in failing to explain her reasons for discounting Dr. Bidol-Lee's January 2022 opinion is harmless. Dr. Bidol-Lee's opinion provided greater limitations than those contained in the RFC for light work and the alternative RFC for sedentary work found by the ALJ. R. 61, 69, 585–88. For example, Dr.

---

[14] While the ALJ went on to note that Plaintiff testified that she could stand for 10 minutes at a time and sit for 20 minutes at a time, R. 62, the Court is not persuaded that such testimony is dispositive or otherwise provides substantial evidence for discounting as a whole Dr. Bidol-Lee's January 2022 opinion that opined, *inter alia*, that Plaintiff could sit for only 10 minutes at a time. R. 586. Dr. Bidol-Lee also opined that Plaintiff needs a position that permits shifting positions at will from sitting, standing, or walking, and that Plaintiff must elevate her legs at chest level 75% of an eight-hour working day. R. 587.

As previously discussed, even the ALJ's alternative RFC for sedentary work—requiring, *inter alia*, a total of sitting with normal breaks for 6 hours in an 8-hour workday and sitting for 30 minutes before allowing Plaintiff to stand or walk for 3 minutes while on task—exceed even the greater period of time testified to by Plaintiff. R. 62, 69, 87.

Bidol-Lee found that Plaintiff could, among other things, sit for only 10 minutes at a time and sit for a total of less than two hours in an eight-hour workday and similarly found the same limitations for standing. R. 586. If credited, this opinion suggests that Plaintiff is arguably limited to less than sedentary work. *See* 20 C.F.R. §§ 404.1567(a) ("Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."); 416.967(a) (same); SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) ("Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.").

Dr. Bidol-Lee also opined, among other things, that Plaintiff would "constantly" need to take unscheduled breaks lasting 10–15 minutes, R. 587, and that Plaintiff was likely to be absent from work more than three times a month, R. 588. These opined limitations take on greater significance when considering that the vocational expert testified that being off task 15% or more during the workday or being absent two or more times per month would preclude the jobs of accounting clerk and administrative clerk. R. 104.

In sum, without further explanation, the Court simply cannot determine from this record if substantial evidence supports the ALJ's rejection of Dr. Bidol-Lee's January 2022 opinion and the RFC determinations at step four. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stating that the ALJ's decision must contain "sufficient development of the record and

22

explanation of findings to permit meaningful review") (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[15]

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  June 2, 2026

*s/Cheryl L. Pollak*
CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE

---

[15] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Bidol-Lee's January 2022 opinion and the RFC determinations, the Court does not consider those assertions.